## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| SOLOMON YEUNG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AKORN, INC., RAJAT RAI, TIMOTHY A. DICK, and BRUCE KUTINSKY,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Solomon Yeung ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Akorn, Inc., ("Akorn" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Akorn securities between April 17, 2014 and March 2, 2015, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Akorn, Inc. engages in the manufacture and marketing of diagnostic and therapeutic ophthalmic pharmaceuticals products, hospital drugs, and injectable pharmaceuticals in the United States and internationally. The Company offers products in various specialty areas, including ophthalmology, antidotes, anti-infectives, pain management, anesthesia, and vaccines. The Company was founded in 1971, is headquartered in Lake Forest, Illinois, and its shares trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "AKRX."

3.      In 2014, the Company completed two critical acquisitions.  On April 17, 2014 the Company completed its acquisition of Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") for $640 million in cash, and on August 12, 2014, the Company completed its acquisition of VersaPharm Incorporated, ("VersaPharm") for $440 million.

4.      Throughout the Class Period, however, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (1) as of December 31, 2014, more than eight months after it acquired Hi-Tech and four months after it acquired VersaPharm, Akorn did not yet integrate those subsidiaries into the Company's centralized accounting department and accounting systems; (2) certain financial and other related data related to Hi-Tech and VersaPharm, which require inclusion in Akorn's annual report to be

2

filed with the SEC on Form 10-K, could not be timely collected and compiled; (3) due to the aforementioned factors, the Company would be unable to timely complete its assessment of the effectiveness of its internal control over financial reporting as of December 31, 2014; (4) Akorn's internal control over financial reporting was ineffective and material weaknesses existed relating to the completeness and accuracy of underlying data used in the determination of significant estimates and accounting transactions and accurate and timely reporting of its financial results and disclosures in its Form 10-K; (5) and as a result of the foregoing, Akorn's public statements were materially false and misleading at all relevant times.

5.     On March 2, 2015, after the close of trading, the Company issued a press release and filed a Form 12b-25, *Notification Of Late Filing*, with the SEC, announcing that it would need an extension to file its annual report on Form 10-K for the year ending December 31, 2014. In the press release, the Company stated, in part:

> Akorn, Inc. (Nasdaq:AKRX), today announced that the Company filed a Form 12b-25, *Notification of Late Filing* with the U.S. Securities and Exchange Commission that allows the Company to extend the deadline to file its Form 10-K for the year ended December 31, 2014. The Company has experienced unforeseen delays in collecting and compiling certain financial and other related data that would be included in the Form 10-K relating to the VersaPharm and Hi-Tech Pharmacal subsidiaries which were not integrated into the Company's centralized accounting department and accounting systems as of December 31, 2014.

> In addition, the Company has not yet completed its assessment of the effectiveness of its internal control over financial reporting as of December 31, 2014 due to the aforementioned factors. The Company believes that material weaknesses exist as of December 31, 2014 relating to the completeness and accuracy of underlying data used in the determination of significant estimates and accounting transactions and accurate and timely reporting of its financial results and disclosures in its Form 10-K. There is a possibility that upon completion of its assessment, the Company may determine that there are additional material weaknesses as of December 31, 2014.

> The Company is in the process of completing the Form 10-K and its assessment of the effectiveness of internal control over financial reporting as of December 31, 2014. The finalization of financial information is not expected to result in any material change to previously reported financial statements or the financial results

reported in our earnings release on February 26, 2015. Additionally, the Company expects to be able to complete its Form 10-K by the extended deadline of March 17, 2015.

6.        As a result of this news, shares of Akorn fell $4.38, or over 8%, on unusually heavy volume, to close at $49.33 on March 3, 2015.

7.        As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.        The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.        This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

10.       Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as defendant is headquartered in this District and a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

11.       In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Akorn securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Akorn is a Louisiana corporation with its principal executive offices located at 1925 West Field Court, Suite 300, Lake Forest, IL.  Akorn's common stock trades on the NASDAQ under the ticker symbol "AKRX."

14.     Defendant Rajat Rai ("Rai") has served as Akorn's Chief Executive Officer ("CEO") at all relevant times.

15.     Defendant Timothy A. Dick ("Dick") has served as Akorn's Chief Financial Officer ("CFO") at all relevant times.

16.      Defendant Bruce Kutinsky ("Kutinsky") has served as Akorn's Chief Operating Officer ("COO") at all relevant times.

17.     The defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

18.     Akorn and the Individual Defendants are referred to herein, collectively, as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Akorn, Inc. develops, manufactures, and markets ophthalmic and injectable pharmaceutical products. The Company sells various diagnostic and therapeutic pharmaceutical products focused primarily on ophthalmology, anesthesia, antidotes, and rheumatology. Akorn also markets ophthalmic surgical instruments and other supplies, and provides contract manufacturing for third parties.

5

20.     The Company has previously experienced issues with internal controls over financial reporting.  On March 3, 2014, the Company issued a press release and filed a Form 12b-25, *Notification Of Late Filing*, with the SEC, announcing that it would need an extension to file its annual report on Form 10-K for the year 2013. In the press release, the Company disclosed that the delay was due to the discovery of material weaknesses in its internal controls relating to accounting transactions, as well as the existence of inadequate segregation of duties. The Company stated:

> The Company has not completed its testing and assessment of the effectiveness of its internal control over financial reporting due in part to identified control deficiencies related to completeness and accuracy of underlying data used in the determination of certain significant estimates and accounting transactions as well as the existence of inadequate segregation of duties. The Company believes that these deficiencies, or combination of deficiencies, represent material weaknesses in its internal control over financial reporting. There is a possibility that upon completion of its testing and assessment of the effectiveness of internal controls over financial reporting, the Company may determine that there are additional material weaknesses. The Company expects to file within the 15-day extension period and expects final financial results will be consistent with those reported in this release.

### Materially False and Misleading Statements Issued During the Period

21.     On April 17, 2014, the first day of the Class Period, the Company issued a press release and filed a Form 8-K with the SEC, announcing the completion of Akorn's acquisition of Hi-Tech.  In the press release, the Company stated, in part:

> LAKE FOREST, Ill.--(BUSINESS WIRE)--April 17, 2014--Akorn, Inc. (NASDAQ: AKRX), a niche pharmaceutical company, announced today that it has completed its previously announced acquisition of Hi-Tech Pharmacal Co., Inc. (NASDAQ: HITK) for $640 million in cash. The combination of Akorn and Hi-Tech will transform the Company into a larger, more diversified generic player. This combination also brings critical mass and scale to Akorn's business and strengthens the Company's position with retail and institutional customers.

**Key Acquisition Highlights:**

- Diversifies revenue base and strengthens R&D pipeline
- Expands manufacturing capabilities into additional niche dosage forms including nasal sprays, topical gels, creams, ointments, and oral liquids
- Provides additional breadth in retail OTC market
- Expect $15-20 million in annual run-rate synergies within 12 months post-close
- Anticipate strong combined cash flow to allow for rapid debt pay-down
- "We are excited to announce that we have completed the acquisition of Hi-Tech, our largest acquisition to date," said Raj Rai, Chief Executive Officer of Akorn. "This transformative acquisition diversifies our revenue base and strengthens our capabilities in both manufacturing and R&D."

Rai further added, "We welcome our new colleagues from the Hi-Tech team and look forward to collaborating with them on the future direction of our company. Our priority now turns to executing on our integration plan. We expect that the acquisition will be immediately accretive to non-GAAP earnings."

22.     On May 6, 2014, the Company issued a press release announcing results for the first quarter ended March 30, 2014. For the quarter, the Company achieved record first quarter consolidated revenue of $90.6 million, an increase of 23% over the prior year's first quarter; generated record operating cash flow of $23.4 million; and completed the acquisition of Hi-Tech on April 17. According to the press release, the Hi-Tech "acquisition adds scale, breadth of products and dosage forms, and further diversification of the Company's product portfolio." Moreover, with respect to the Hi-Tech acquisition, the press release further stated:

- ***Cost synergies that result from the Hi-Tech acquisition are expected to be realized throughout the year and will accelerate as the year progresses. The Company anticipates ending the year at a $20 million annual run-rate for synergies***.

- The Company anticipates that it will incur approximately $20-22 million in one-time acquisition-related expenses to close the Hi-Tech transaction and realize synergies. These expenses are reflected as add-backs to adjusted net income per diluted share in the GAAP to non-GAAP reconciliation later in this release.

23.     On May 12, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Dick, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q included certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Rai and Dick, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.     With respect to the Company's internal controls and procedures, the Form 10-Q stated:

> With the oversight of senior management and our audit committee, we have begun taken steps and plan to take additional measures to remediate the underlying causes of the material weaknesses. With respect to completeness and accuracy concerns, management intends to add additional accounting and internal audit personnel and design, document, and test controls that are intended to validate the completeness and accuracy of the data used in our significant estimates and accounting transactions. With respect to timely and accurate filing of our financial results, management intends to add additional accounting personnel, and to design, document, and test controls that are intended to ensure timely filing. With respect to segregation of duties, management intends to implement information technology tools to identify and assess segregation of duties issues, and to design, document and test controls to either eliminate or mitigate potential segregation of duties concerns.   While the Company believes it will remediate the material weaknesses prior to filing its Form 10-K for the period ending December 31, 2014, the Company can provide no assurance at this time that management will be able to report that our internal control over financial reporting is effective as of December 31, 2014.
>
> ***Notwithstanding the identified material weaknesses, management believes the consolidated financial statements included in this Quarterly Report on Form 10-Q fairly represent in all material respects our financial condition, results of operations and cash flows at and for the period presented in accordance with U.S. GAAP.***

25.     On August 5, 2014, the Company issued a press release announcing results for the second quarter ended June 30, 2014.  For the quarter, the Company achieved record second quarter consolidated revenue of $150.7 million, an increase of 96% over the prior year's second

quarter and record adjusted net income per diluted share of $0.25, an increase of 79% over the prior year's second quarter; raised 2014 outlook to a revenue range of $580 to $600 million and an adjusted net income per diluted share range of $1.00 to $1.05; and announced acquisition of VersaPharm, which was expected to add $90 to $100 million in annual revenue and $0.10 to $0.12 adjusted net income per diluted share. The Company announced that the acquisition was projected to close mid-August. Moreover, with respect to the Hi-Tech acquisition, the press release further stated that "[c]ost synergies that result from the Hi-Tech acquisition are expected to be realized throughout the year and will accelerate as the year progresses. The Company anticipates ending the year at a $20 million annual run-rate for synergies."

26.     On August 11, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Dick, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q included signed SOX certifications by defendants Rai and Dick, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27.     With respect to the Company's internal controls and procedures, the Form 10-Q stated:

> With the oversight of senior management and our audit committee, we have begun taken steps and plan to take additional measures to remediate the underlying causes of the material weaknesses. With respect to completeness and accuracy concerns, management intends to add additional accounting and internal audit personnel and design, document, and test controls that are intended to validate the completeness and accuracy of the data used in our significant estimates and accounting transactions. With respect to timely and accurate filing of our financial results, management intends to add additional accounting personnel, and to design, document, and test controls that are intended to ensure timely filing. With respect to segregation of duties, management intends to implement information technology tools to identify and assess segregation of duties issues, and to design, document and test controls to either eliminate or

9

mitigate potential segregation of duties concerns. While the Company believes it will remediate the material weaknesses prior to filing its Form 10-K for the period ending December 31, 2014, the Company can provide no assurance at this time that management will be able to report that our internal control over financial reporting is effective as of December 31, 2014.

*Notwithstanding the identified material weaknesses, management believes the consolidated financial statements included in this Quarterly Report on Form 10-Q fairly represent in all material respects our financial condition, results of operations and cash flows at and for the period presented in accordance with U.S. GAAP.*

28.     On August 12, 2014, the Company issued a press release and filed a Form 8-K with the SEC, announcing the completion of Akorn's acquisition of VersaPharm. In the press release, the Company stated, in part:

LAKE FOREST, Ill., Aug. 12, 2014 (GLOBE NEWSWIRE) -- Akorn, Inc. (Nasdaq:AKRX), a niche pharmaceutical company, announced today that it has completed its previously announced acquisition of VPI Holdings Corp., the parent company of VersaPharm Incorporated, for $440 million.

**Key Acquisition Highlights:**

- Increases Akorn's presence in the highly attractive niche dermatology market
- Provides a complementary product portfolio to bolt on to the Hi-Tech acquisition that closed earlier this year
- Straightforward integration process due to VersaPharm's outsource manufacturing model
- Expected to add $90 to $100 million in annual revenues and $0.10 to $0.12 in earnings per share, excluding new pipeline launches, deal amortization and acquisition-related expenses

"We are excited to announce that we have completed the acquisition of VersaPharm," said Raj Rai, Chief Executive Officer of Akorn. "This highly strategic acquisition further strengthens our niche portfolio and accelerates our long-term growth opportunities."

29.     On November 6, 2014, the Company issued a press release announcing results for the second quarter ended June 30, 2014. Consolidated revenues for the third quarter were $132.7 million and included $39.9 million of costs associated with price increases. Excluding these

costs, third quarter adjusted net income per diluted share was $0.27. The Company's prior full year guidance for revenue and adjusted net income per diluted share included an estimated $25 million in costs associated with price increases.  Moreover, defendant Rai further stated:

> Our strong business momentum continued this quarter, with double digit organic growth and strong performance from the acquisitions that were completed over the last 12 months. Our strategic initiatives to diversify our portfolio of products have allowed us to reinvent the business, which has opened numerous new market opportunities and has positioned Akorn as a much broader provider of specialty generics. Our current portfolio of marketed and pipeline products operate in strong markets with favorable competitive dynamics, which will provide us with sustainable growth opportunities as we move forward. We expect to close 2014 with record sales and earnings, which will set us firmly on the path to achieve over $1 billion in annual sales in the future.

30.     On November 10, 2014, the Company filed its quarterly financial report on Form 10-Q with the SEC which was signed by defendant Dick, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q included signed SOX certifications by defendants Rai and Dick, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     With respect to the Company's internal controls and procedures, the Form 10-Q stated:

> With the oversight of senior management and our audit committee, we have begun taken steps and plan to take additional measures to remediate the underlying causes of the material weaknesses. With respect to completeness and accuracy concerns, management intends to add additional accounting and internal audit personnel and design, document, and test controls that are intended to validate the completeness and accuracy of the data used in our significant estimates and accounting transactions. With respect to timely and accurate filing of our financial results, management intends to add additional accounting personnel, and to design, document, and test controls that are intended to ensure timely filing. With respect to segregation of duties, management intends to implement information technology tools to identify and assess segregation of duties issues, and to design, document and test controls to either eliminate or mitigate potential segregation of duties concerns.   While the Company believes

it will remediate the material weaknesses prior to filing its Form 10-K for the period ending December 31, 2014, the Company can provide no assurance at this time that management will be able to report that our internal control over financial reporting is effective as of December 31, 2014.

*Notwithstanding the identified material weaknesses, management believes the consolidated financial statements included in this Quarterly Report on Form 10-Q fairly represent in all material respects our financial condition, results of operations and cash flows at and for the period presented in accordance with U.S. GAAP.*

32.     On February 26, 2015, the Company issued a press release announcing preliminary fourth quarter and full year 2014 results.  Consolidated revenue for the fourth quarter was $227.8 million and included $12.4 million of costs associated with competitive pricing actions during the fourth quarter. GAAP diluted earnings per share (EPS) was $0.29 in the fourth quarter of 2014, compared to GAAP EPS of $0.14 in the prior year period. Adjusted non-GAAP diluted EPS for the fourth quarter 2014 increased to $0.50 compared to $0.14 in the fourth quarter of 2013.  Consolidated revenue for full year 2014 was $601.9 million and included $52.2 million of costs associated with competitive pricing actions during the second half of the year. GAAP diluted EPS was $0.38 for the full year 2014, compared to GAAP EPS of $0.46 for the full year 2013. Adjusted non-GAAP diluted EPS for full year 2014 increased to $1.16 compared to $0.55 in full year 2013.

33.     The press release further stated:

**2014 Represented a Key Transformative Year for Akorn**

- In 2014, Akorn received 14 unique product approvals, representing a combined IMS annual market size of $850 million.
- Akorn launched five of these products in 2014 and expects to be in a position to launch the remaining nine products approved in 2014 throughout 2015.
- The Company completed the acquisition of Hi-Tech Pharmacal on April 17, adding over 50 new products to the Akorn portfolio.

- Akorn completed the acquisition of VersaPharm on August 12, complementing the Hi-Tech acquisition through the addition of 20 products along with a robust pipeline of dermatology-focused pipeline products.
- In early October, Akorn acquired rights to Xopenex® Inhalation Solution from Sunovion, adding a leading established respiratory product to the Akorn portfolio.
- Akorn acquired five marketed and four pipeline veterinary products from Lloyd, Inc. in early October, supplementing Akorn's growing presence in the veterinary market.

"2014 was a transformative and rewarding year for Akorn," said Raj Rai, Akorn's Chief Executive Officer. "In a short period of time we have built a robust and well-diversified specialty generics platform that will provide future growth opportunities through a growing pipeline of products and a reliable acquisition strategy. I remain confident in the long term prospects of our business."

34. The statements referenced in ¶¶ 21-33 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) as of December 31, 2014, more than eight months after it acquired Hi-Tech and four months after it acquired VersaPharm, Akorn did not yet integrate those subsidiaries into the Company's centralized accounting department and accounting systems; (2) certain financial and other related data related to Hi-Tech and VersaPharm, which require inclusion in Akorn's annual report to be filed with the SEC on Form 10-K, could not be timely collected and compiled; (3) due to the aforementioned factors, the Company would be unable to timely complete its assessment of the effectiveness of its internal control over financial reporting as of December 31, 2014; (4) Akorn's internal control over financial reporting was ineffective and material weaknesses existed relating to the completeness and accuracy of underlying data used in the determination of significant estimates and accounting transactions and accurate and timely reporting of its

financial results and disclosures in its Form 10-K; and (5) as a result of the foregoing, Akorn's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

35.     On March 2, 2015, after the close of trading, the Company issued a press release and filed a Form 12b-25, *Notification Of Late Filing*, with the SEC, announcing that it would need an extension to file its annual report on Form 10-K for the year 2014. In the press release, the Company stated, in part:

> Akorn, Inc. (Nasdaq:AKRX), today announced that the Company filed a Form 12b-25, *Notification of Late Filing* with the U.S. Securities and Exchange Commission that allows the Company to extend the deadline to file its Form 10-K for the year ended December 31, 2014. The Company has experienced unforeseen delays in collecting and compiling certain financial and other related data that would be included in the Form 10-K relating to the VersaPharm and Hi-Tech Pharmacal subsidiaries which were not integrated into the Company's centralized accounting department and accounting systems as of December 31, 2014.
>
> In addition, the Company has not yet completed its assessment of the effectiveness of its internal control over financial reporting as of December 31, 2014 due to the aforementioned factors. The Company believes that material weaknesses exist as of December 31, 2014 relating to the completeness and accuracy of underlying data used in the determination of significant estimates and accounting transactions and accurate and timely reporting of its financial results and disclosures in its Form 10-K. There is a possibility that upon completion of its assessment, the Company may determine that there are additional material weaknesses as of December 31, 2014.
>
> The Company is in the process of completing the Form 10-K and its assessment of the effectiveness of internal control over financial reporting as of December 31, 2014. The finalization of financial information is not expected to result in any material change to previously reported financial statements or the financial results reported in our earnings release on February 26, 2015. Additionally, the Company expects to be able to complete its Form 10-K by the extended deadline of March 17, 2015.

36.     As a result of this news, shares of Akorn fell $4.38, or over 8%, on unusually heavy volume, to close at $49.33 on March 3, 2015.

37.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Akorn securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Akorn securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Akorn or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Akorn;

- whether the Individual Defendants caused Akorn to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Akorn securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

44.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Akorn securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Akorn securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

17

49.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Akorn securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Akorn securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

50.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Akorn securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Akorn's finances and business prospects.

51.     By virtue of their positions at Akorn, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

52.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Akorn securities from their personal portfolios.

53.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Akorn, the Individual Defendants had knowledge of the details of Akorn's internal affairs.

54.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Akorn. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Akorn's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Akorn securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Akorn's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Akorn

securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

55.     During the Class Period, Akorn securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Akorn securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Akorn securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Akorn securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

56.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     During the Class Period, the Individual Defendants participated in the operation and management of Akorn, and conducted and participated, directly and indirectly, in the conduct of Akorn's business affairs.  Because of their senior positions, they knew the adverse non-public information about Akorn's false financial statements.

60.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Akorn's financial condition and results of operations, and to correct promptly any public statements issued by Akorn which had become materially false or misleading.

61.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Akorn disseminated in the marketplace during the Class Period concerning Akorn's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Akorn to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Akorn within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Akorn securities.

62.     Each of the Individual Defendants, therefore, acted as a controlling person of Akorn.  By reason of their senior management positions and/or being directors of Akorn, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause,

Akorn to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Akorn and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

63. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Akorn.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 4, 2015

Respectfully submitted,

**POMERANTZ, LLP**

 _/s/ Jeremy A. Lieberman_
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       fmcconville@pomlaw.com

Patrick V. Dahlstrom
Louis C. Ludwig
**POMERANTZ LLP**
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com
       lcludwig@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.   I,  Solomon Yeung_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Akorn, Inc. ("Akorn" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Akorn securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Akorn securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Akorn securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.


**Executed __March 3, 2015**_____
                     **(Date)**


_____
                                          **(Signature)**


Solomon Yeung_____
                     **(Type or Print Name)**

**AKORN INC (AKRX)**                                    **Yeung, Solomon**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 02/27/2015 | PUR | 14 | $54.2460 |