UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re AKORN, INC. SECURITIES LITIGATION )
) 15 C 1944
)
) Judge Gary Feinerman

**MEMORANDUM OPINION AND ORDER**

Three individuals ("Named Plaintiffs") bring this suit against Akorn, Inc. and two of its officers, Rajat Rai and Timothy A. Dick, on behalf of themselves and a class of others who purchased Akorn stock between May 6, 2014 and April 24, 2015, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Doc. 82. After the court denied Defendants' Rule 12(b)(6) motion, Docs. 111-112 (reported at 240 F. Supp. 3d 802 (N.D. Ill. 2017)), discovery commenced and, months later, Named Plaintiffs moved for class certification, Doc. 132. Shortly after the class certification motion was fully briefed, the parties agreed to settle the suit on a classwide basis for $24 million. Doc. 161. The court granted preliminary approval of the settlement and provisional certification of the settlement class. Doc. 167.

Named Plaintiffs now move for final approval of the settlement, certification of the settlement class, attorney fees, costs, and incentive awards. Doc. 171. The court in an oral ruling granted final approval and class certification, but entered and continued the requests for attorney fees, costs, and incentive awards. Doc. 177. The requests for costs and incentive awards are granted, and the request for attorney fees is granted in part and denied in part.

**A.     Attorney Fees**

"In a certified class action, the court may award reasonable attorney's fees … that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit has

1

"described the district judge as a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotation marks omitted). It follows that "the judge must assess … the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). Because Defendants are paying a specific sum to be allocated among class counsel and the class, equitable principles permit the court to "determine[] the amount of attorney's fees that plaintiffs' counsel may recover" from the settlement "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. NationsBank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (internal quotation marks omitted).

"[A]ttorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services." *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013). It follows that the district court "must set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 246-47 (7th Cir. 2014) (internal quotation marks omitted); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") ("[C]ourts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). "Such estimation is inherently conjectural," *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011), and the Seventh Circuit does not prescribe a preferred method of calculation, so "in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district

court," *Americana Art*, 743 F.3d at 247. "The simple and obvious way for the judge to correct an excessive attorney's fee for a class action lawyer is to increase the share of the settlement received by the class, at the expense of class counsel." *Pearson*, 772 F.3d at 786 (internal quotation marks omitted).

Class counsel request a fee award of 33% of the $24 million settlement, Doc. 176 at 3 n.2, which comes to $7,920,000. As the Seventh Circuit has directed, "the ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman*, 768 F.3d at 630. After subtracting litigation expenses ($375,280.60) and incentive awards ($30,000), both of which are discussed below, the amount available for the attorney fees and payments to class members is $23,594,719.24. So the percentage of the settlement fund sought by class counsel, properly calculated, is actually 33.6%.

Class counsel's request for a flat percentage of the entire settlement fund ignores the Seventh Circuit's repeated observation that negotiated fee agreements regularly apply a sliding scale in which the percentage of the settlement devoted to attorney fees decreases as the dollar value of the settlement fund increases. *See Silverman*, 739 F.3d at 959; *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 978-80 (7th Cir. 2003) ("*Synthroid II*"); *Synthroid I*, 264 F.3d at 721; *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572-73 (7th Cir. 1992). As the Seventh Circuit has described the sliding-scale approach:

> [N]egotiated fee agreements regularly provide for a recovery that increases at a decreasing rate … .
>
> Many costs of litigation do not depend on the outcome; it is almost as expensive to conduct discovery in a $100 million case as in a $200 million case. Much of the expense must be devoted to determining liability, which does not depend on the amount of damages; in securities litigation damages often can be calculated mechanically from movements in stock prices. There may be some marginal costs of bumping the recovery from $100 million to

3

> $200 million, but as a percentage of the incremental recovery these costs are bound to be low. It is accordingly hard to justify awarding counsel as much of the second hundred million as of the first. The justification for diminishing marginal rates applies to $50 million and $500 million cases too, not just to $200 million cases.
>
> Awarding counsel a decreasing percentage of the higher tiers of recovery enables them to recover the principal costs of litigation from the first bands of the award, while allowing the clients to reap more of the benefit at the margin (yet still preserving some incentive for lawyers to strive for these higher awards).

*Silverman*, 739 F.3d at 959. Empirical studies cited by the Seventh Circuit confirm that the percentage of the settlement allocated to attorney fees tends to decrease as the total size of the settlement increases. *See id*. at 958 (citing Theodore Eisenberg & Geoffrey P. Miller, "Attorney Fees and Expenses in Class Action Settlements: 1993-2008," 7 *J. Empirical Legal Stud.* 248, 265 (2010)).

In *Synthroid II*, the Seventh Circuit awarded attorney fees in the amount of 30% of the first $10 million of the class settlement, 25% of the second $10 million, and 22% of the amount between $20 million and $46 million. 325 F.3d at 980. Applying the *Synthroid II* scale to the $23,594,719.24 settlement fund in this case yields a fee of $6,290,838.23—30% of first $10 million = $3 million; 25% of second $10 million = $2.5 million; 22% of the final $3,594,719.24 = $790,838.23. That award amounts to approximately 26.7% of the properly calculated settlement fund ($23,594,719.24), and 26.2% of the total $24 million settlement, which higher than the median percentage (24.9%) in class settlements of this size. *See* Eisenberg & Miller, 7 *J. Empirical Legal Stud.* at 265 (from 1993 to 2008, the median attorney fee percentage for class recoveries between $22.8 million and $38.3 million was 24.9%).

Class counsel contend that it would be inappropriate to apply the sliding scale in this case. First, they argue that the absence of any objection from Akorn's many institutional shareholders demonstrates the reasonableness of their flat-percentage request. Doc. 178 at 2-3.

4

It is true that the failure of institutional investors to object to an attorney fee request can be a factor supporting the request, *see Silverman*, 739 F.3d at 959, but it is by no means dispositive. Regardless of whether institutional investors raise any objections, the district court remains the "fiduciary of the class," *Pearson*, 772 F.3d at 780 (internal quotation marks omitted), which includes less sophisticated individual investors, and therefore the court should strive to set a fee that would have been agreed to in arm's length negotiations.

Next, class counsel observe that the sliding scale may be inappropriate in some cases because it "create[s] declining marginal returns to legal work, ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery." *Synthroid I*, 264 F.3d at 721. As an example of circumstances where the sliding scale would generate perverse incentives, the Seventh Circuit in *Synthroid I* cited *In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000). In *Auction Houses*, the defendants' liability for $405 million in damages had already been established in other proceedings, with damages over that amount contested in the case. *See Synthroid I*, 264 F.3d at 721. A sliding scale would have given the attorneys a large share of the guaranteed $405 million recovery, for which they would have had to do no work, but only a small percentage of anything over $405 million, which would have encouraged them to settle for the guaranteed damages rather than pushing for more. *Ibid*. To avoid that problem, the attorneys agreed to take no fees on the first $405 million recovered and 25% of everything above that amount. *Ibid*.

Class counsel argue that, as in *Auction Houses*, the sliding scale would have encouraged them to accept an earlier, lower settlement offer from Defendants rather than rejecting it and performing the extra work that gained a greater recovery for the class. Doc. 178 at 5. Class counsel do not give any details about the earlier settlement offer, so the court cannot assess how

5

attractive it might have been. But regardless, given the modest rate reduction effected by the sliding scale in this $24 million case, the earlier settlement offer could not have been anywhere near the point at which class counsel's "opportunity cost … exceed[ed] the benefits of pushing for a larger recovery." *Synthroid I*, 264 F.3d at 721. Indeed, class counsel at the motion hearing acknowledged that they would not have altered their litigation strategy had they known from the outset that a sliding scale would determine their fees. Doc. 180.

More fundamentally, class counsel's attempt to explain, *ex post*, how a sliding scale might have adversely impacted their decisionmaking at an earlier juncture in the litigation misses the point. The court must "set a fee by approximating the terms that would have been agreed to *ex ante*, had negotiations occurred." *Americana Art*, 743 F.3d at 246-47. In *Auction Houses*, the plaintiffs knew *ex ante* that $405 million was there for the taking, and consciously avoided the sliding scale in order to encourage their attorneys to pursue a larger recovery. There was no similarly obvious problem with the sliding scale in this mine-run securities class action. *Ex ante*, this looked like the sort of typical securities class action described in *Silverman*—a case where the sliding scale is appropriate because the lion's share of legal work goes into establishing liability rather than bumping up the damages. 739 F.3d at 959.

The alleged problem with applying the sliding scale in this case is in fact a universal feature of the sliding scale fee structure: because the attorney's percentage of the settlement fund decreases with the size of the recovery, the sliding scale will always marginally decrease the incentive to reject an inadequate settlement and fight for a larger recovery. Sophisticated parties know this, but nonetheless tend to choose the sliding scale absent obviously perverse incentives like those in *Auction Houses*. *See Silverman*, 739 F.3d at 959 ("[N]egotiated fee agreements regularly provide for a recovery that increases at a decreasing rate.").

6

Class counsel also contend that the sliding scale should apply only to especially large settlements, such as the $200 million recovery in *Silverman*. Doc. 178 at 5-6. But *Silverman* itself stated that "[o]ur concern is less with the absolute level of fees than with the structure of the award." 739 F.3d at 959. Class counsel's contention is also inconsistent with the *Synthroid II* scale, which imposed its first rate reduction at $10 million and another at $20 million. Moreover, the Seventh Circuit has suggested applying the sliding scale in a $45 million securities class action, *Cont'l Ill.*, 962 F.2d at 572-73, and has cited favorably a case in which the sliding scale was applied to a $25 million securities settlement, *see Synthroid I*, 264 F.3d at 721 (citing *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1457 (N.D. Cal. 1994)).

Finally, class counsel argue that, even if the sliding scale applies, they should receive a "risk premium" that increases the cascading percentages laid out in *Synthroid II*. Doc. 178 at 6. But class counsel do not explain why the risk of nonpayment was particularly high in this case. True, Named Plaintiffs had the burden of proving that Defendants' misstatements were intentional and material, as well as the extent of damages, but that does not distinguish this case from the typical securities class action. In any event, the most recent empirical study cited by the Seventh Circuit establishes that the mean percentage for "high risk" securities class actions is 26.4%, *see* Eisenberg & Miller, 7 *J. Empirical Legal Stud.* at 265, which is just about what class counsel will collect under the *Synthroid II* scale.

In sum, the court will apply the *Synthroid II* sliding scale and grant an attorney fee award of $6,290,838.23. The $1,629,161.77 difference between the requested fees and the awarded fees will be returned to the settlement fund, of which $17,303,881.17 is now earmarked for distribution to the class.

B.  Costs

Class counsel submit itemized lists of expenses for expert witnesses, document vendors, mediation, and travel, among other things.  Docs. 174-2 at 6; 174-3 at 6; 174-4 at 6.  Together, those expenses total $375,280.60.  The court finds those costs to be reasonable.  *See Synthroid I*, 264 F.3d at 722 (holding that courts should award class counsel market-rate litigation expenses and that "[i]f counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more").  The court also notes that the costs come to 1.56% of the settlement amount, which is below median in comparable cases.  *See* Eisenberg & Miller, 7 *J. Empirical Legal Stud.* at 274.

C.  **Incentive Awards**

The three Named Plaintiffs request incentive awards of $10,000 apiece.  Doc. 173 at 16.  Incentive "awards are justified when necessary to induce individuals to become named representatives."  *Synthroid I*, 264 F.3d at 722; *see also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 875 (7th Cir. 2012).  Such awards compensate the class representatives for time spent on the litigation, and also for subjecting themselves to the "slight risk of being made liable for sanctions, costs, or other fees should the suit go dangerously awry."  *Cont'l Ill.*, 962 F.2d at 572.  In deciding whether an incentive award is proper and, if so, in what amount, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Named Plaintiffs spent time reviewing pleadings, responding to interrogatories, collecting documents responsive to discovery requests, and preparing and sitting for depositions.  Given the substantial time spent on this litigation for the benefit of the class as a whole, the

requested incentive awards of $10,000 per Named Plaintiff are appropriate. *See ibid*. (approving a $25,000 incentive award where the named plaintiff spent "hundreds of hours" on the case); *In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *3 (N.D. Ill. Aug. 26, 2013) (granting a $15,000 incentive award where the named plaintiff assisted with discovery, prepared and sat for depositions, and regularly consulted with class counsel).

## Conclusion

For the foregoing reasons, the motions for costs and incentive awards are granted, and the motion for attorney fees is granted in part and denied in part. The court modifies the terms of the settlement such that the $24 million common fund is distributed as follows: (1) class member payments in the amount of $17,303,881.17; (2) attorney fees and costs in the amount of $6,666,118.83; (3) incentive awards to the three class representatives in the amount of $10,000 each ($30,000 total).

June 5, 2018

_____
United States District Judge